## Case No. 12,735.

SHECKLER et al. v. The GENEVA BOXER.

District Court, W. D. Pennsylvania. July 6, 1829.

ADMIRALTY JURISDICTION—INLAND RIVERS—WAGES OF SEAMEN.

Where a crew was shipped at Cincinnati, in Ohio, a regular port of entry, in a vessel of upwards of 10 tons burthen, and proceeded with her to Pittsburg, Pennsylvania, also a port of entry, where the freight and cargo were discharged, without payment of the wages of the crew, the court, upon a libel by the crew, determined that it had jurisdiction, and decreed a sale of the vessel for payment of their wages.

[Decided by WALKER, District Judge. Nowhere reported; opinion not now accessible. The statement of the points determined was taken from Serg. Const. Law, 195.]

[NOTE. This decision, rendered in 1829, was based upon section 9 of the judiciary act of 1789 (1 Stat. 77), which conferred upon the district court exclusive admiralty and maritime jurisdiction, "including all seizures under the laws of impost, navigation or trade of the United States, where the seizures are made on waters which are navigable from the sea by vessels of ten or more tons burthen." In the Thomas Jefferson (1825), on appeal from the circuit court of Kentucky, a suit for wages earned on a voyage from a point in that state, up the Mississippi and Missouri rivers and return, the supreme court, by Mr. Justice Story, held that, as the voyage, in its commencement, progress, and termination, was several hundred miles above the ebb and flow of the tide, the wages could in no just sense be considered as having been earned in a maritime employment, and, further, that the act of 1789, is limited in its application to the cases therein stated, and would not cover voyages of this nature, unless congress had extended the right to sue in admiralty courts to such cases. 10 Wheat. (23 U. S.) 428. This remained the law until the act of 1845 (5 Stat. 726: Rev. St. § 566), extended the admiralty jurisdiction to matters "arising upon or concerning any vessel of twenty tons burthen or upward, enrolled or licensed for the coasting trade, and at the time employed in the business of commerce and navigation between places in different states and territories upon the lakes and navigable waters connecting the lakes." The Thomas Jefferson was subsequently (1851) overruled by The Genesee Chief v. Fitzhugh, 12 How. (53 U. S.) 443. Mr. Justice Taney pointed out that the early limitation of admiralty jurisdiction in the United States to tide waters was due to the fact that the English admiralty only extends to tide waters, for the reason that there are no other navigable streams in that country, and that for many years after the act of 1789, the commerce of the United States was such that no maritime questions arose on other than tide waters. The act of 1845 was held a constitutional grant of judicial power, under that provision of the constitution which embraces "all cases of admiralty and maritime jurisdiction." The jurisdiction conveyed by Act 1789, § 9, was held "to depend upon the navigable character of the water, and not upon the ebb and flow of the tide. If the water was navigable, it was deemed to be public, and, if public, was regarded as within the legitimate scope of the admiralty jurisdiction conferred by the constitution." In 1857, a cause came before the supreme court directly involving the act of 1789. It grew out of a collision on the Alabama river, in the state of Alabama, some miles above tide water, and the district court had dismissed the libel for want of jurisdiction. It was held that that act embraced all waters "navigable from the sea" by vessels of the prescribed class, without regard to the ebb and flow of the tide. Jackson v. The Magnolia, 20 How. (61 U. S.) 296.]